UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HASAN NAJAFI KHABOSHAN, *et al.*,

*Plaintiffs*,

v.

U.S. DEPARTMENT OF STATE, *et al.*,

*Defendants*.

Civil Action No. 26 - 92 (SLS)
Judge Sparkle L. Sooknanan

**MEMORANDUM OPINION**

Hasan Najafi Khaboshan and Elnaz Yousefi, Iranian nationals living in Malaysia, brought this action to compel a decision on their immigrant visa applications. After they sued, consular officers refused the applications under Section 212(f) of the Immigration and Nationality Act, 8 U.S.C. § 1182(f), pursuant to Proclamation 10998, which suspends the entry of Iranian nationals into the United States. The Plaintiffs amended their Petition to challenge the refusals, and to add their newborn daughter, E.N.K., as a Plaintiff. The Defendants have moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Although the Court is sympathetic to the Plaintiffs' claims and recognizes the harms caused by the systemic delays in our visa-adjudication system, it must grant the Defendants' motion and dismiss this case.

**BACKGROUND**

**A. Statutory Background**

The Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq., governs the admission of noncitizens to the United States. It establishes an employment-based, second-preference immigrant visa category, commonly known as EB-2, for "members of the professions holding advanced degrees or their equivalent" and persons of "exceptional ability in

the sciences, arts, or business[.]" *Id.* § 1153(b)(2)(A). To qualify for an EB-2 visa, applicants ordinarily must have a job offer from a United States employer and an approved labor certification. *See id.*; 8 C.F.R. § 204.5(k)(4)(i). But the U.S. Citizenship and Immigration Services (USCIS) may waive those requirements when the agency "deems it to be in the national interest[.]" *See* 8 U.S.C. § 1153(b)(2)(B)(i); 8 C.F.R. § 204.5(k)(4)(ii). An applicant seeking a "national interest waiver" may petition on her own behalf by filing a Form I-140. 8 C.F.R. § 204.5(k)(1). Moreover, the spouse or child of an EB-2 applicant may be "entitled to the same status, and the same order of consideration" as the principal applicant "if accompanying or following to join" her. 8 U.S.C. § 1153(d).

Once USCIS approves an EB-2 application, the applicant ordinarily must (1) apply for an immigrant visa at the consular office with jurisdiction over the applicant's place of residence; and (2) appear personally before a consular officer for an interview. *See* 8 U.S.C. § 1202(e); 22 C.F.R. §§ 42.61(a), 42.62. The applicant bears the burden of proving eligibility for the visa. 8 U.S.C. § 1361; 22 C.F.R. § 40.6. When the application "has been properly completed and executed before a consular officer," the officer "must issue the visa" or "refuse the visa under INA 212(a) or 221(g) or other applicable law[.]" 22 C.F.R. § 42.81(a). Section 221(g) of the INA, 8 U.S.C. § 1201(g), bars issuance of a visa when, among other things, the application "fails to comply with the provisions of [the INA], or the regulations issued thereunder," or "the consular officer knows or has reason to believe that such alien is ineligible to receive a visa . . . under Section 1182 of this title, or any other provision of law[.]" A refusal under Section 221(g) is often followed by "administrative processing," during which the Department of State gathers additional information bearing on the applicant's eligibility. *See Naseri v. Rubio*, No. 24-cv-2125, 2025 WL 1865035, at *2–3 (D.D.C. July 7, 2025).

The INA also gives the President authority to restrict entry into the United States. Under Section 212(f), the President may by proclamation "suspend the entry of all aliens or any class of aliens," or impose other entry restrictions, upon finding that their entry would be "detrimental to the interests of the United States[.]" 8 U.S.C. § 1182(f). Invoking that authority, President Donald J. Trump signed Proclamation 10998, "Restricting and Limiting the Entry of Foreign Nationals To Protect the Security of the United States," on December 16, 2025. Proclamation No. 10998, 90 Fed. Reg. 59717 (Dec. 16, 2025). The Proclamation continued the full suspension of entry of Iranian nationals that a prior proclamation, Proclamation 10949, had imposed in June 2025. *Id.* §§ 1(c), 2(h); *see also* Proclamation No. 10949, 90 Fed. Reg. 24497 (June 4, 2025). Subject to specified exceptions, Proclamation 10998 applies only to covered foreign nationals who were outside the United States and lacked a valid U.S. visa on January 1, 2026. Proclamation No. 10998, 90 Fed. Reg. 59717 §§ 6(a), 10. The suspension "shall not apply" to several categories, including "immigrant visas for ethnic and religious minorities facing persecution in Iran," *id.* § 6(b)(vi), and it permits the Government to grant further exceptions for individuals whose travel "would serve a United States national interest," *id.* § 6(e)–(f).

### B. Factual Background

The Court draws the facts, accepted as true, from the Plaintiffs' Amended Complaint and attachments. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). Because two of the Plaintiffs are proceeding pro se, the Court considers their Amended Complaint "in light of all filings, including filings responsive to [the] motion to dismiss." *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (per curiam) (cleaned up).

Hasan Najafi Khaboshan and Elnaz Yousefi are Iranian nationals who have lived in Malaysia since October 2021. Am. Compl. ¶¶ 7–8, 70, ECF No. 18. Their daughter, E.N.K., was born in Malaysia in early 2026 and resides there with her parents. *Id.* ¶¶ 2, 9.

In August 2022, Mr. Najafi Khaboshan filed a Form I-140 petition seeking classification as an EB-2 immigrant with a national interest waiver, based on his research in "fields of critical importance to the United States[.]" *Id.* ¶¶ 7, 14. Ms. Yousefi, Mr. Najafi Khaboshan's spouse, is the derivative beneficiary of that petition. *Id.* ¶ 8. After USCIS approved the Form I-140 National Interest Waiver petition, Mr. Najafi Khaboshan and Ms. Yousefi attended a consular interview at the U.S. Embassy in Kuala Lumpur (the Embassy) in February 2024. *Id.* ¶ 14. The consular officer refused their applications under Section 221(g) and placed them in administrative processing. *Id.* ¶ 15.

The Plaintiffs then "waited for . . . years without a substantive update" despite being "repeatedly assured by Embassy officials that their case was active[.]" *Id.* ¶¶ 16–17. According to the Plaintiffs, the officer who had interviewed them left the Embassy in October 2024, so they were "effectively abandoned, left unassigned, and permitted to languish in an administrative black hole[.]" *Id.* ¶ 16. Had they received a "solid [] reject[ion]," the Plaintiffs would have pursued academic opportunities at "top-tier universities" in Australia or the United Kingdom. *Id.* ¶ 26. But they stayed in Malaysia and enrolled in PhD programs there, *id.* ¶ 27, because they did not want to "abandon[] their hard-earned, approved National Interest Waiver immigration opportunity," *Id.* ¶ 24. Pursuing their PhDs in Malaysia "heavily prejudice[d] their long-term academic career trajectories." *Id.* ¶ 27.

In December 2025, in response to an inquiry from the Office of Senator Edward J. Markey, the Embassy confirmed that the case was "still undergoing administrative processing." *Id.* ¶ 18.

The Embassy acknowledged that the case "has been pending beyond normal expected processing times" but anticipated that processing would "likely continue for some time." Email Correspondence (Dec. 2025) at 2, Pls.' Ex. 9, ECF No. 18-9; *Id.*

**C. Procedural Background**

On January 1, 2026, Mr. Najafi Khaboshan and Ms. Yousefi, "out of options and facing an egregious delay," filed this action, proceeding pro se, seeking to compel adjudication of their applications. Am. Compl. ¶ 19; *see* Pet. for Writ of Mandamus (Pet.), ECF No. 1. The Defendants were served on March 16, 2026. Am. Compl. ¶ 20. Three weeks later, on April 8, 2026, the Embassy issued a refusal notice to Mr. Najafi Khaboshan; it issued one to Ms. Yousefi on April 16. *Id.*; Letter from U.S. Embassy Kuala Lumpur to Hasan Najafi Khaboshan (Najafi Khaboshan Refusal Letter), Pls.' Ex. 1, ECF No. 18-1; Letter from U.S. Embassy Kuala Lumpur to Elnaz Yousefi (Yousefi Refusal Letter), Pls.' Ex. 2, ECF No. 18-2. Each notice stated that "a consular officer found [the applicant] ineligible for an immigrant visa under Section 212(f) of the Immigration and Nationality Act, pursuant to Presidential Proclamation 10998," that the decision "[could not] be appealed," and that "a National Interest Exception" would "not be granted[.]" Najafi Khaboshan Refusal Letter; Yousefi Refusal Letter. One week later, in response to an inquiry from the Senator Markey's Office, the Embassy again characterized Mr. Najafi Khaboshan's decision as a "final refusal" but invited him to submit further information concerning a potential persecution-related exception if applicable. Email Correspondence (April 2026) at 3, Pls.' Ex. 10, ECF No. 18-10.

The Plaintiffs then sought reconsideration on the grounds that they are ethnic and religious minorities facing persecution in Iran. Am. Compl. ¶¶ 21, 62. According to the Amended Complaint, Mr. Najafi Khaboshan is an ethnic Kurd who, while living in Malaysia, converted from

Islam to Christianity, which is a "capital offense in Iran." *Id.* ¶ 28. Ms. Yousefi is a Sunni Muslim and is part of the Kurdish community from Sanandaj, a community that "ha[s] historically faced heavy political and economic marginalization by the Iranian regime[.]" *Id.* ¶ 28. On May 13, 2026, the Embassy informed the Plaintiffs that a consular officer had "reviewed all documents and information submitted" and "determined that [they] do not qualify for an Immigrant Visa exception for ethnic and religious minorities facing persecution in Iran." Email Correspondence (May 13, 2026), Pls.' Ex. 6, ECF No. 18-6.

After the Defendants moved to dismiss the original petition as moot in light of the Embassy's refusal letters, *see* Am. Compl. ¶¶ 1, 6; Defs.' Mot. to Dismiss, ECF No. 11, the Plaintiffs filed an Amended Complaint in June 2026, adding their infant daughter, E.N.K., as a Plaintiff. Am. Compl. ¶ 2. In July 2026, an attorney entered an appearance as counsel for E.N.K., ECF No. 24, and in September filed a notice ratifying and adopting the Amended Complaint's allegations on her behalf, Notice of Ratification and Adoption, ECF No. 37.

The Defendants moved to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defs.' Mot. to Dismiss Am. Compl. (Mot.), ECF No. 22. The motion is fully briefed and ripe for decision. *See* Pls.' Mem. Opp'n to Mot. to Dismiss (Opp'n), ECF No. 25; Defs.' Reply (Reply), ECF No. 32.

## LEGAL STANDARD

"A motion under Rule 12(b)(1) presents a threshold challenge to a court's [subject-matter] jurisdiction." *Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 585 F. Supp. 3d 63, 69 (D.D.C. 2022) (cleaned up). A plaintiff bears the burden of establishing a court's jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). In evaluating whether a plaintiff has met that burden at the pleading stage, a court may "accept as true all of the factual allegations contained in the complaint." *Am. Freedom L. Ctr. v. Obama*, 821 F.3d 44, 49 (D.C.

Cir. 2016) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002)). "But [a] court is not limited to the allegations of the complaint and may consider such materials outside the pleadings as it deems appropriate." *New Mexico v. Musk*, 824 F. Supp. 3d 80, 91 (D.D.C. 2026) (cleaned up). In evaluating a Rule 12(b)(1) motion to dismiss, a district court may "where necessary . . . consider the complaint supplemented by undisputed facts evidenced in the record." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

Under Rule 12(b)(6), a court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss under Rule 12(b)(6), courts "must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). But courts need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. *See Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court must "liberally construe[]" a pro se litigant's complaint and "consider [the] complaint 'in light of' all filings[.]" *Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024) (first quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curium); and then quoting *Brown*, 789 F.3d at 152). "Even a *pro se* complainant, however, must plead 'factual matter that permits the court to infer more than the mere possibility of misconduct.'" *Mazza v. Verizon Wash. DC, Inc*, 852 F. Supp. 2d 28, 33 (D.D.C. 2012) (quoting *Atherton v. D.C. Office of the Mayor*, 576 F.3d 672, 681 (D.C. Cir. 2009)).

## DISCUSSION

The Plaintiffs bring a slew of challenges to the Government's processing and adjudication of their visa applications under the Administrative Procedure Act (APA), 5 U.S.C. §§ 555(b), 706, and the Mandamus Act, 28 U.S.C. § 1361. They challenge the delays in adjudicating their visa applications and the visa refusals under Proclamation 10998. Am. Compl. ¶¶ 32–71. None of their claims survive dismissal. Because Mr. Najafi Khaboshan and Ms. Yousefi have now received decisions on their applications, their unreasonable-delay claims are moot. The doctrine of consular nonreviewability, moreover, bars their challenges to the individual refusals. And E.N.K.'s unreasonable-delay claim fails on the merits. The Court therefore grants the Defendants' motion and dismisses this case.

### A. Mootness

The Defendants first argue that Mr. Najafi Khaboshan's and Ms. Yousefi's unreasonable-delay claims are moot. The Court agrees.

Under Article III, a federal court "may only adjudicate actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988). A case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (cleaned up). "The party seeking jurisdictional dismissal must establish mootness, while the opposing party has the burden to prove that a mootness exception applies." *Mehneh v. Rubio*, 164 F.4th 928, 931 (D.C. Cir. 2026) (quoting *Reid v. Hurwitz*, 920 F.3d 828, 832 (D.C. Cir. 2019)).

On April 8 and April 16, 2026, the Embassy informed both Mr. Najafi Khaboshan and Ms. Yousefi that it had refused their visa applications. *See* Najafi Khaboshan Refusal Letter; Yousefi Refusal Letter. Each refusal letter states that the "consular officer found [the applicant] ineligible for an immigrant visa under Section 212(f) of the Immigration and Nationality Act,

pursuant to Presidential Proclamation 10998," that a National Interest Exception would "not be granted," and that the decision "[could not] be appealed." Najafi Khaboshan Refusal Letter; Yousefi Refusal Letter. After receiving the letters, the Plaintiffs again had the Office of Senator Edward J. Markey reach out to the Embassy on their behalf. Email Correspondence (April 2026). In its email response, the Embassy confirmed that the decision was a "final refusal" but stated that Mr. Najafi Khaboshan could provide "further information . . . concerning a potential exception . . . related to persecution." Email Correspondence (April 2026). In May 2026, the Plaintiffs notified the Embassy that they had submitted documents in support of their request for an exception for ethnic and religious minorities facing persecution in Iran. *See* Email Correspondence (May 7, 2026), Pls.' Ex. 5, ECF No. 18-5. The consular officer responded that the Plaintiffs "[did] not qualify for an Immigrant Visa exception," that their case was "still refused" under Section 212(f), and that a "consular officer [would] review [their] case again once there is an update." Email Correspondence (May 13, 2026).

Although the visa process can be opaque, the consular officer's refusals were final adjudications under the relevant case law. *Mehneh v. Rubio* is the latest D.C. Circuit authority. 164 F.4th 928. There, the plaintiffs appealed the dismissal of two complaints alleging unreasonable delay in the adjudication of their visa applications. *Id.* at 930–31. While the appeal was pending, the Government completed its administrative processing, issuing one visa and refusing the other. *Id.* at 931. The D.C. Circuit held that both plaintiffs' claims had become moot. *Id.* at 931–33.

To be sure, *Mehneh* involved a refusal that rested on a different provision, Section 212(a)(3)(B) of the INA, which makes a noncitizen inadmissible for "terrorist activities." 8 U.S.C. § 1182(a)(3)(B); *Mehneh*, 164 F.4th at 932. The Plaintiffs' refusals here occurred under Section 212(f) of the INA. 8 U.S.C. § 1182(f). Even so, the basis of the refusals does not change

things. Indeed, courts in this District have applied *Mehneh*'s reasoning to refusals under Section 212(f). In *Nikjooy v. Rubio*, for example, the court held that a "Section 212(f) denial [based on a Presidential Proclamation issued after the plaintiff filed suit] . . . constitute[d] a final adjudication of [the plaintiff's] visa application" for mootness purposes. No. 24-cv-1989, 2026 WL 1801159, at *4 (D.D.C. June 23, 2026). Likewise, in *Sorbi v. Rubio*, a court in this District held that the refusal of an immigrant visa after suit was filed mooted the claims seeking to compel adjudication. No. 25-cv-2353, 2026 WL 2474966, at *5–6 (D.D.C. Aug. 24, 2026); *accord Aramnahad v. Rubio*, No. 24-cv-1817, 2025 WL 3706645, at *3–4 (D.D.C. Dec. 22, 2025); *Aboutalebi v. Dep't of State*, No. 19-cv-2605, 2019 WL 6894046, at *2 (D.D.C. Dec. 18, 2019). In *Sorbi*, an Iranian applicant's visa application was in Section 221(g) administrative processing when the suit began. 2026 WL 2474966 at *2. A consular officer later refused it under Section 212(f) and Proclamation 10998—the same Proclamation and statutory ground for refusal at issue in this case. *Id.* at *3. And as here, the refusal notice stated that the decision could not be appealed and that a National Interest Exception would not be granted. *Id.* These decisions support the conclusion that the final Section 212(f) refusals in this case mooted the Plaintiffs' claims seeking to compel adjudication.

The Plaintiffs invoke the voluntary cessation exception to mootness, arguing that the Defendants have engaged in bad faith litigation tactics that cannot manufacture mootness. Opp'n at 12. When "a party voluntarily ceases the challenged activity," the case is not moot "unless it is 'absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Pub. Citizen, Inc. v. FERC*, 92 F.4th 1124, 1128 (D.C. Cir. 2024) (*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). But as *Mehneh* explains, that burden applies "only if there is some evidence that the party sought to manipulate the court's jurisdiction." 164

F.4th at 931 n.*, 931–32 (cleaned up). The Plaintiffs' voluntary cessation argument relies on the timing of the refusals after service of the original Petition and the interviewing officer's departure from the Embassy after the interview. Opp'n at 12–15. But these circumstances do not establish that the Government sought to *manipulate* this Court's jurisdiction. Moreover, the *Mehneh* court rejected a similar argument, holding that the timing of the refusal was "not sufficient for [it] 'to impute such manipulative conduct to a coordinate branch of government.'" 164 F.4th at 932 (quoting *Clarke v. United States*, 915 F.2d 699, 705 (D.C. Cir. 1990) (en banc)). Therefore, the Plaintiffs' bare allegation of bad faith based on timing is insufficient to invoke the voluntary-cessation exception.

For these reasons, the Court concludes that Mr. Najafi Khaboshan's and Ms. Yousefi's unreasonable-delay claims are moot. Those Plaintiffs originally asked the Court to compel a decision on their visa applications. But the Government has made a decision on the Plaintiffs' visa applications by refusing them under Section 212(f). The Court understands that the decisions are not the results that the Plaintiffs hoped for, but the Court is powerless to grant them relief. It therefore dismisses those claims under Federal Rule of Civil Procedure 12(b)(1) without prejudice. *See Givens v. Bowser*, 111 F.4th 117, 122 (D.C. Cir. 2024) (explaining that "[a] dismissal for mootness is a dismissal for lack of jurisdiction" and "as a general rule, . . . should be dismissed 'without prejudice'" (citation omitted)).

### B. Consular Nonreviewability

The Court turns to Mr. Najafi Khaboshan's and Ms. Yousefi's challenges to their Section 212(f) visa refusals. Ultimately, the Court finds those challenges barred under the doctrine of consular nonreviewability.

The doctrine of consular nonreviewability "shields a consular official's decision to issue or withhold a visa from judicial review[.]" *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021). The doctrine is expansive, applying "even where it is alleged that the consular officer failed to follow regulations" or "where the decision is alleged to have been based on a factual error." *Aramnahad*, 2025 WL 3706645, at *6 (cleaned up); *see also Chun v. Powell*, 223 F. Supp. 3d 204, 206 (D.D.C. 2002) (explaining that the doctrine of consular nonreviewability applies when consular officers did not follow regulations or makes a decision "based on a factual or legal error"). The Supreme Court put it clearly: "The Immigration and Nationality Act (INA) does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions." *Dep't of State v. Muñoz*, 602 U.S. 899, 908 (2024).

Here, the April 2026 refusal letters found Mr. Najafi Khaboshan and Ms. Yousefi ineligible for immigrant visas under Section 212(f). *See* Najafi Khaboshan Refusal Letter; Yousefi Refusal Letter. The Embassy later informed them that the consular officer had reviewed their additional evidence and determined that they did not qualify for the minority exception. *See* Email Correspondence (May 13, 2026). Mr. Najafi Khaboshan and Ms. Yousefi no doubt disagree with those decisions; they claim that the officer failed to obtain updated professional credentials, disregarded Mr. Najafi Khaboshan's approved National Interest Waiver, and wrongly assessed their eligibility for the minority exception. Am. Compl. ¶¶ 53–64. But a challenge to the adequacy of the evidence underlying a visa denial cannot be separated from a challenge to the denial itself. *See Maui Hope v. Embassy of the U.S.*, No. 25-cv-654, 2025 WL 3687556, at *4 (D.D.C. Dec. 19, 2025). There is "no basis to distinguish between (1) a claim that a consular officer reached a decision using inadequate evidence, and (2) a claim that the officer reached the wrong decision." *Id.* "Both are barred by the doctrine of consular nonreviewability." *Id.*

The doctrine of consular nonreviewability is subject to two narrow exceptions. *Baan Rao*, 985 F.3d at 1024–25. A claim otherwise barred by the doctrine is subject to judicial review if (1) "the denial of a visa allegedly burdens the constitutional rights of a U. S. citizen," *Muñoz*, 602 U.S. at 908 (quoting *Trump v. Hawaii*, 585 U.S. 667, 703 (2018), or (2) a "statute expressly authorizes judicial review of consular officers' actions," *Baan Rao*, at 1025 (cleaned up). But neither exception applies here. The Plaintiffs neither allege that their visa denials affect the rights of an American citizen nor identify any statutory authorization for review of their refusals.

In sum, Mr. Najafi Khaboshan's and Ms. Yousefi's challenges to their Section 212(f) visa refusals are barred by consular nonreviewability. Because "the doctrine of consular nonreviewability is non-jurisdictional," *Baan Rao*, 985 F.3d at 1028 (citing *Trump v. Hawaii*, 585 U.S.), the Court dismisses those claims with prejudice under Federal Rule of Civil Procedure 12(b)(6).

**C. Unreasonable Delay**

Finally, the Court turns to the claims of the Plaintiffs' infant daughter, E.N.K., who was named for the first time in the Amended Complaint.

E.N.K. was born in January 2026. *See* Birth Certificate of E.N.K. Pls.' Ex. A, ECF No. 6-1; Visa Application Confirmation, Pls.' Ex. B, ECF. No. 6-1. The Amended Complaint alleges that E.N.K. is a "derivative beneficiary of the principal applicant's EB-2 NIW visa file," Am. Compl. ¶ 9, but that she "has not been interviewed, has not completed immigrant visa processing, and has not received any visa adjudication or refusal," *id.* ¶ 2.

On July 29, 2026, Sebastian Krop entered an appearance as counsel for E.N.K. ECF No. 24. And on September 2, 2026, he filed a Notice for Ratification, which purported to "ratif[y], adopt[], and re-affirm[] as his own signed pleading" various portions of the Amended Complaint. Notice

of Ratification and Adoption ¶ 5. Principally, the Notice adopts Count I of the Amended Complaint, which alleges the complete absence of any adjudication of E.N.K.'s derivative immigrant visa application and unreasonable delay under 5 U.S.C. § 706(1). Despite the Notice, the Defendants argue that E.N.K.'s claims are not properly before the Court because her non-attorney parents could not represent her and counsel's later appearance did not cure the defect without an amended pleading. *See* Mot. at 8; Reply at 4–5; *see also United States ex rel. Feliciano v. Ardoin*, 127 F.4th 382, 383 (D.C. Cir. 2025) (per curiam) ("While parties may conduct their own cases pro se, 28 U.S.C. § 1654, a non-attorney cannot appear [pro se] and seek to represent others[.]" (cleaned up) (alteration in original)).

Whether or not E.N.K.'s ratification was procedurally proper, her claim fails. E.N.K. has not plausibly alleged unreasonable delay under the factors set out in *Telecommunications Research & Action Center v. FCC (TRAC)*, 750 F.2d 70, 80 (D.C. Cir. 1984). The so-called *TRAC* factors are:

> (1) The time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities or a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

*In re People's Mojahedin Org. of Iran*, 680 F.3d 832, 836–37 (D.C. Cir. 2012) (per curiam) (cleaned up). Considering the factors together, "the central question is 'whether the agency's delay is so egregious as to warrant mandamus.'" *Id.* at 837 (citation omitted).

Here, the first two factors favor the Government. E.N.K. was only about five months old when the Plaintiffs filed the Amended Complaint, so any delay in processing her application could

have lasted, at most, five months. Am. Compl. ¶¶ 2, 9, 35. And a delay of five months is generally insufficient to state a claim for unreasonable delay. *Tekle v. Blinken*, No. 21-cv-1655, 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022) ("Courts in this District consistently have held that two or three years does not constitute an unreasonable delay." (collecting cases)); *see also, e.g.*, *Sadiq v. Rubio*, No. 25-cv-2448, 2026 WL 913084, at *3 (D.D.C. Apr. 3, 2026) (allegations of nine-month delay insufficient); *Alam v. Bitter*, No. 23-cv-2557, 2024 WL 3509457, at *3 (D.D.C. July 23, 2024) (allegations of 26-month delay insufficient). The Plaintiffs assert that E.N.K.'s status as a derivative beneficiary entitles her to count the longer period that her parents spent awaiting adjudication. Opp'n at 24–25. Although 8 U.S.C. § 1153(d) affords a derivative beneficiary the principal applicant's "same status" and "same order of consideration," it does not transform the principal's processing time into her own.[1] *Cf. Gupta v. Jaddou*, 118 F.4th 475, 486 (1st Cir. 2024) ("The text of § 1153(d) . . . says nothing about when an application -- derivative or otherwise -- must be adjudicated.").

The third and fifth factors slightly favor E.N.K. given the family's alleged safety concerns and other hardships, *see* Am. Compl. ¶¶ 28–30. But *TRAC* factor four favors the Defendants because E.N.K.'s requested relief amounts to queue jumping. *Thein v. Trump*, No. 25-cv-2369, 2025 WL 2418402, at *13 (D.D.C. Aug. 21, 2026) (noting that the D.C. Circuit has "refused to grant relief, even though all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain" (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d

[1] Even counting the delay in this case to track the visa applications of E.N.K.'s parents, 28 months does not suffice to maintain an unreasonable delay claim. *See Motevali v. Rubio*, No. 24-cv-1029, 2025 WL 885116, at *7 (D.D.C. Mar. 21, 2025) ("Courts in this District label delays between three to five years as reasonable and generally extend the unreasonable label to delays more than five years." (cleaned up)).

1094, 1100 (D.C. Cir. 2003))). And the sixth factor is neutral. Although E.N.K. accuses the Government of bad faith, nothing in the record supports "impropriety lurking" behind the decision making in this case. *In re People's Mojahedin Org. of Iran*, 680 F.3d at 836–37. Taken together, the *TRAC* factors warrant dismissal of E.N.K.'s unreasonable-delay claim under Rule 12(b)(6).[2]

## CONCLUSION

For the foregoing reasons, the Court grants the Defendants' Motion to Dismiss Amended Complaint, ECF No. 22. The Court dismisses Mr. Najafi Khaboshan's and Ms. Yousefi's unreasonable-delay claims under Rule 12(b)(1) as moot, and their challenges to their individual refusals and E.N.K.'s unreasonable-delay claim under Rule 12(b)(6) for failure to state a claim. The Court denies the Motion to Compel Production of the Administrative Record, ECF No. 30, the Motion for Leave to Conduct Extra-Record Discovery, ECF No. 39, the Emergency Motion for Expedited Consideration, ECF No. 40, and the Motion for Leave to File a Sur-Reply, ECF No. 35, as moot.

A separate order will issue.

SPARKLE L. SOOKNANAN
United States District Judge

Date: October 26, 2026

[2] During and after briefing on the Defendants' motion, the Plaintiffs filed a slew of other motions: (1) a Motion to Compel Production of the Administrative Record under Local Civil Rule 7(n), ECF No. 30, which is fully briefed, *see* ECF Nos. 33, 38; (2) a Motion for Leave to File a Sur-Reply, ECF No. 35, which they later said they "do not press . . . further at this time," *see* ECF No. 40 at 3; (3) a Motion for Leave to Conduct Extra-Record Discovery, seeking discovery into the processing and refusal of their applications, ECF No. 39; and (4) an Emergency Motion for Expedited Consideration of Pending Motions, ECF No. 40. The Court denies those motions as moot.